Kenneth S. Pelsinger (kp 4039)
Attorney for Plaintiff
3601 Hempstead Turnpike Suite 410
Levittown, NY 11756
(516) 784-5225

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RAFFEENA RAMJOHN<br><br>Plaintiffs,<br><br>VS.<br><br>JPMORGAN CHASE BANK, N.A. and WASHINGTON MUTUAL BANK, F.A.,<br><br>Attorneys in Fact, Named and Unnamed Affiliates & Associates 1-100 inclusive,<br><br>Defendants. | Case No.<br><br>VERIFIED COMPLAINT<br><br>FOR DECLARATORY JUDGMENT & OTHER APPROPRIATE RELIEF<br><br>JURY TRIAL REQUESTED<br><br>AS APPROPRIATE |

Plaintiff, RAFFEENA RAMJOHN, brings this action to obtain Declaratory Relief, and an injunction against Defendant, JPMORGAN CHASE BANK NATIONAL ASSOCIATION ("Chase"), and any person or entity affiliated with the same Named and Unnamed for and upon the deceptive and unlawful business practices.

## I. JURISDICTION & VENUE

1    This declaratory action is proper in this Court pursuant, but not limited to, 28 U.S.C.§§ 1331, 1332, 1338, 2201 and 2202. This Court has supplemental jurisdiction over any related state law claims pursuant to 28 U.S.C. §1367.[1]

2    Venue in this District arises for multiple reasons within the scope and meaning of 28 USC §1391(b). This Court also holds personal jurisdiction in that Chase and its affiliates pursuant to the acts alleged herein occurring within this District. Qui Tam venue also arises for cause because of the continuation of the violations of the Securities laws and may the court's jurisdiction in nature of a Qui Tam relation with the court authorized to issue injunctions pursuant but not limited to, Title 15 U.S.C. 53(b) and for damages pursuant to NYS GBL § 349.[2] The request for issuance of the preliminary and permanent injunctions against Defendants are appropriately issued by this court enjoining them from continuing to engage in the accounting and other financial fraud practiced under color of authority.

## II. PARTIES & RELATIONSHIP

3    Plaintiff, RAFFEENA RAMJOHN are natural persons, home owners and consumers who are the record owner of the property located in the State of New York and the signatories of the commercial paper that was converted into federal securities or traded on the national exchanges that is the subject of this Complaint.

---

[1] Ancillary jurisdiction arises because there is probable cause for this court's exercise of qua tam jurisdiction under but not limited to Sections 21(d), 21(e) and 27 of the Exchange Act [15 U.S.C. 78u(d), 78u(e) and 78aa]; and/or 26 IRC 860G *et seq.*

[2] § 349(a)(h), Deceptive acts and practice in the conduct of any business, or trade or commerce in the furnishing of any service in this state are hereby declared unlawful. (h) In addition to the right of action granted the attorney general pursuant to this section, any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court in its discretion may increase the award of damages in an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant acted willfully or knowingly violated this section.

4      Defendant, JPMorgan Chase Bank, NA ("Chase"), is a bank that provides a range of banking and other financial services to the corporate, institutional and governmental clients in the United States and internationally. The company also provides consumer loans, such as residential mortgages, home equity loans and lines of credit, auto loans, business banking loans and student and other loans. Chase is located at 1111 Polaris Parkway, Columbus Ohio 43240 United States.

5      Defendant, Washington Mutual Bank, FA ("WaMu"), was a savings bank holding company. It was seized by the Office of Thrift Supervision and placed into receivership with the Federal Deposit Insurance Corporation.

## IV. SUMMARY

6      This case involves a New York residential mortgage that was fraudulently taken by Chase in Plaintiff's name.

7      Plaintiffs seeks to obtain an injunction enjoining Defendants and their affiliates from continued engagement and use of deceptive acts and practices that this court is authorized to enjoin under but not limited to 28 U.S.C. § 2201 and (10) NY GBS § 349(a-h).

8      In addition, the court is requested to consider making a referral to the respective Commissions, Agencies or Departments, such as the Securities and Exchange Commission, the Internal Revenue Service or the Department of Justice because the action involves persistent and habitual misconduct and fraud relating to filing or making of records, reports, statements and receipt of federal tax benefits by Defendants.

## V. GENERAL AND FACTUAL ALLEGATIONS

9      Defendants do not lawfully or rightfully own or hold the note or mortgage or any title interest in the Plaintiffs' property.

10  Defendants manufactured and used a false complaint and other fake and counterfeit records to enable it to induce Westchester County Supreme Court to act upon the fake and counterfeit records and obtain a judgment of foreclosure and pending order for sale.

11  Defendant Chase is the Plaintiff in foreclosure case against Plaintiffs number venued in New York Supreme Court, Westchester County.

12  Defendant Chase purports to be the owner and holder of the subject Note and Mortgage.

13  Upon information and belief Plaintiffs asserts that Defendant has violated and will continue to violate and Federal laws (specifically the sale and conveyance requirements) and New York State and has engaged in deceptive business practices to conceal and cover their fraudulent actions.

14  Upon information and belief Plaintiffs asserts that Defendants have violated Federal securities and tax laws in that it issued securities upon note and mortgages it did not lawfully own or possess.

15  Upon information and belief Plaintiffs asserts that this Defendants have violated Federal REMIC laws, specifically (IRC 869(g)) and advertised in New York and elsewhere, was a qualified REMIC and that it owned and held the note and mortgage in 2012 when in fact it did not own and hold the mortgage and note and has been making materially misleading statements in the Supreme Court and before federal regulatory bodies about this REMIC status and ownership of the mortgage and note.

16  That is, the ownership representations of 2012, are impeached or discredited by the belated assignment which on its face indicating that Defendants issued certificates that were known to be false and misleading at that time which is now causing Plaintiffs damages and injuries by way of the deceptive and misleading advertisements and claims about the loan's

lawful ownership made in public, made to the United States and made against him in debt collection proceedings in the state action.

17  Defendants also know or should reasonably know that there was in fact no such valid or true sale being another reason the transaction is void on its face and was reasonably known to have been void when the claims were made.

18  Beginning in 2012 and continuing to the present time in New York and elsewhere, Defendants are asserting it have or had a title interests it does not have. In doing so it has advertised in New York that owned the same when it did not and have engaged in deceptive business practices to conceal and cover Defendants' lack of subject matter jurisdiction over the mortgage and note.

19  Defendants purports that it hold or own Plaintiffs' note and mortgage upon behalf of the Certificate Holders or that it did at the initiation of the action or filing of the debt collection claims in state court. This claim is believed to involve federal securities. Federal Securities and tax laws are believed to exclusive to federal jurisdiction and may operate to preempt state regulatory laws and preempts this civil action.

20  The assertion of ownership is believed to be derivative of or is based upon an assignment from or on behalf of Washington Mutual Bank, F.A. in 2012.

21  However, this is not possible because Washington Mutual Bank, FA collapsed in 2008 when the United States Office of Thrift Supervision seized Washington Mutual Bank from Washington Mutual, Inc. and placed it into receivership with the Federal Deposit Insurance Corporation.

22  Defendants are evading federal law and legal requirements and is believed to have filed false statements or reports with the United States claiming REMIC status.

23   Neither the Defendant nor its affiliates or associates, in fact had authority to acquire or transfer the note nor mortgage.

24   Defendants are not acting as a "Bank" in this instance but rather it is acting as a Debt collector.

25   This debt collection is being undertaken under color of state law or authority.

26   This debt collection is believed to have been initiated upon or by and through the use of deceptive or misleading practices of the Defendant and its affiliates.

## As and for a First Cause of Action for Declaratory Judgment & Injunctive Relief as to Deceptive Practices Against Defendant & Defendants' Affiliates: Fraudulent Credit Line Mortgage

All prior paragraphs are incorporated by reference:

27   On January 25, 2008, Plaintiff signed a note taking a mortgage in the amount of $210,000.00 from Washington Mutual Bank, FA. *See Exhibit A – a copy of the note annexed hereto.*

28   Thereafter, Washington Mutual Bank, FA was seized by the Office of Thrift Supervision and placed into the receivership of the FDIC.

29   According to Defendant's state court complaint, the mortgage and note was then allegedly assigned from FDIC to JPMorgan Chase Bank, National Assocation, by assignment of mortgage dated August 1, 2012.

30   Thereafter, in October 11, 2007, Washington Mutual, FA fraudulently took out a "WaMu Equity Plus Credit Line Mortgage" in the amount of $400,000.00. Plaintiff only learned of this recently upon doing a lien search on her premises. *See Exhibit B – a copy of the Credit Line Mortgage annexed hereto.*

31      Based upon the forgoing it is evident that Defendants, WaMu and Chase, along with its affiliates are attempting to collect a debt in the form of taking Plaintiffs' home and continue to violate state laws by falsely claiming to be the owner and holder of the mortgage and note in order to illegally foreclose and steal the Plaintiffs' property and have engaged in deceptive business practices to conceal and cover the Trusts and its Trustee's lack of subject matter jurisdiction.

32      Plaintiffs seeks a finding that no title was ever properly or lawfully transferred to Defendants as purported in the Complaint and that the compliant and the exhibits conflict the exhibits control which is an independent basis to establish the debt collection simulation and mal practice by way of the complaint or its exhibits.

33      Plaintiffs seeks a finding that no title was ever properly or lawfully transferred to Defendants as purported in the Complaint. State law establishes when the complaint and the exhibits conflict, the exhibits control as an independent basis to establish the debt collection simulation of the Defendant by way of the complaint or its exhibits.

34      Plaintiffs therefore ask the court to find that Defendant fraudulent issued a Credit Line Mortgage in the name of the Plaintiff without her consent and signature.

35      Plaintiffs alleges there is good cause for the court to declare the same as a deceptive artifice and device entitling him to injunctive relief as authorized by but not limited to, New York GBS 349(a-h); 26 IRC 860(d) and declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202, finding and declaring that the practices of using a false signatory, false assignments and false debt collection complaints or assignment in judicial proceedings public land title records are in fact deceptive and misleading and provide no title interest whatsoever sufficient to warrant issuance of a permanent injunction.

## As and for a Second Cause of Action for Declaratory Judgment Against Defendants & Defendants' Affiliates: Compliance with GAAP & SEC Regulations

All prior paragraphs are incorporated by reference;

36  By virtue of the foregoing and the facts Defendants have shown or established probable cause sufficient to support a finding that Defendants have materially failed in its compliance measures with GAAP, FAS 140, true sale requirements and have engaged in other violations of Federal Securities laws sufficient to warrant a finding of probable cause for penalty assessments upon which Plaintiffs would receive an award pending or upon such assessments as authorized under, but not limited to, provisions of Dodd Frank Wall Street Reform acts in nature of a probable cause finding under but not limited to, 17 CFR §§ 240 10b5.

## As and for a Third Cause of Action for an Injunction Against Defendants & Defendants' Affiliates: Pursuant to RPAPL Article 15

All prior paragraphs are incorporated by reference:

37 That Plaintiffs have no adequate remedy at law for the harm she will suffer because it is impossible for Plaintiffs to calculate the precise amount of damages they will incur if Defendants commence foreclosure proceedings and are awarded a judgment of foreclosure and sale in the Supreme Court, Westchester County.

38 That Plaintiffs have no adequate remedy at law for the harm they will suffer because it is impossible for Plaintiffs to calculate the precise amount of damages they will incur if the subject mortgage premises are sold at public auction pursuant to a foreclosure action in the Supreme Court, Westchester County.

39  That Plaintiffs have no adequate remedy at law because it is impossible for Plaintiffs to calculate the precise amount of damages it will suffer because of a judgment of foreclosure and sale in Defendants' favor would be subject to additional costly litigation.

40  That Plaintiffs have no adequate remedy at law because it is impossible for Plaintiffs to calculate the precise amount of damages it will suffer to vacate a judgment of foreclosure and sale and or referee's deed transferring title to the subject premises because same would be subject to additional costly litigation.

41  That Plaintiffs will be further damaged in like manner if Defendants do not cease and desist from commencing a foreclosure action against Plaintiffs in the Supreme Court, Westchester County while Plaintiffs are prosecuting the within action against Defendants.

42  That the equities are balanced in Plaintiffs favor because only they would be severely harmed and prejudiced if it is compelled to defend Defendants' foreclosure action incurring additional litigation costs and expenses if Defendants commence a foreclosure action s in the Supreme Court, Westchester County, while Plaintiffs are prosecuting the within action against Defendants.

43  That by virtue of the foregoing, Defendants must be restrained and enjoined from commencing a foreclosure action in the Supreme Court, Westchester County, pending final disposition of the within Plaintiffs' action.

## As and for a Fourth Cause of Action for Declaratory Judgment Against Defendant & Defendants' Affiliates: § 559.72 Prohibited Practices

All prior paragraphs are incorporated by reference:

44  A controversy arises and exists between Defendants and Plaintiffs in that Defendants through its affiliates and agents are operating as debt collectors for or upon the behalf of Defendants.

45  Defendants and its affiliates including have and will continue to assert the same unless enjoined or prohibited from using a fatally defective and contradictory complaint and other documents in public and judicial proceedings which documents were generated, uttered and or used in commerce so they could and would pretend there is a lawful basis for obtaining a judgment of foreclosure and a sale order.

46  By this pretext, Defendants so asserting the claim or existence of a debt owed to them by Plaintiffs. These activities were undertaken taken collectively, severally and jointly by defendants under color authority on arguably known false records made to pretend the existence of a debt to them which they are attempting to collect in direct violation of New York Law. Defendants know or should know from their own indenture instruments, and after assessments of billions of dollars in fines and civil penalties that the assignments are robo signed, involve fraud, and are not legitimate.

47  Defendants have also used and are using communications that is intended to simulate legal and/or judicial processes or that gives or gave the appearance of being authorized when it was not.

## As and for a Fifth Cause of Action for Declaratory Judgment: Unlawful Debt Collection & Provision of Substantial Assistance, Aiding and Abetting Securities Fraud

All prior paragraphs are incorporated by reference:

48   Defendants along with others to be discovered engaged in a securities "washback" scheme - a scheme which is and was motivated by the desire of Defendant and the Trust to appear as a REMIC to avoid large year-end tax payments and/or to make it appear that there were "true sales" by and through the artifice and device of the debt collection complaint and other records filed in the state foreclosure action that they reasonably should have known or that they knew was false failed for a want of true consideration and common law fraud. Defendants knew the statements were misleading when the statements were made.

49   Defendants made and continues to make the statements in connection with the conduct described herein, Defendants, directly or indirectly, made statements and used the means or instrumentalities of interstate commerce, or the U. S. Mails and/or the facilities of a National exchange.

50   Defendants would and did use void or counterfeit assignments that expose the reality that they are engaging in and structuring a conspiracy to violate tax laws of the United States, debt collection laws of New York and the United States, and to deceive and mislead the Plaintiffs, the Public, credit default swap parties and others into believing that such an assignment could lawfully transfer an interest to the Trust or the Trustee well after the closing of the trust.

51   Defendants and the debt collection attorneys would then "book" these records or "valuations" to sustain or increase their stock prices when defendants know or should have known the assignment of mortgage did not and does not meet general accounting requirements of

FAS 140 or GAAP principals indicating there was a "true sale" for value as represented and/or in the Alternative establishes the certificates were fraudulently issued.

52     These facts alone are suggested to be sufficient to warrant a finding of probable cause for issuance of an injunction and ordering of a referral to the SEC for administrative hearing requested by Plaintiffs on violations of, but not limited to Federal Securities and REMIC fraud.

53     Plaintiffs asserts there is a clear and present preemption against such state regulatory authority over federal securities.

54     Defendants are using an administrative contrivance that amounts to aiding and abetting insider trading schemes where State Court is being used to administrate questions and issues that relate to federal securities and federal tax jurisdictions.

55     This scheme uses a state's general authority and in doing so violates state and federal debt collection laws where it habitually and routinely misrepresents the status and character of the debt where there is strict liability and no immunity for such material misrepresentations in a debt collection as decided by the United States Supreme Court in *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA et al.*, 559 U.S. ____ (2010).

56     The debt collection practice is an abuse "racket" being cloaked under the cover of Judicial proceedings that somehow purports to allow the Defendants the right or power to adjudicate federal securities matter with fake or counterfeit complaints and/or and void assignments, held under a state general authority or the pretense of a debt collection or under color of a foreclosure jurisdiction on federal securities.

57     The "securities" or accrued rights as claimed to be "held" are not one in the same within the state jurisdiction over a power sale clause or the "foreclosure or debt collection jurisdiction to which defendants are not parties on the original instruments and are attempting to get there by

the fake and false records and use of materially misleading and known false statements regarding a conveyance styled as an assignment of the note and mortgage long after the closing of the trust and not made by the depositor to the trust.

### As and for a Sixth Cause of Action for Civil Rights Violations: Intentional Discrimination State implemented or State assisted Taking of Property 42 USC §§ 1983 §§ 1988(a) Under Color of State Authority

All prior paragraphs are incorporated by reference;

58     Federal declaratory review and injunctions are appropriate here under 42U.S.C. §§ 1983 §§ 1988(a) and 28 USC §2201, along with other constitutional equal protection and Due Process standards thereby implicated.

59     The state proceeding utterly have failed in consideration of the important federal interest and the likelihood of a federal preemption of its present conduct or allowance of the defendants here to use its administrations under color of such authority.

60     As a general rule, a federal court has a "virtually unflagging obligation" to adjudicate controversies properly before it. *Deakins v. Monaghan*, 484 U.S. 193, 203 (1988). In carrying out this duty, federal courts "may well affect, or for practical purposes pre-empt" a pending state court action, but "there is no doctrine that . . . the pendency of state judicial proceedings excludes the federal courts." *New Orleans Pub. Serv. Inc.("NOPSI") v. Council of New Orleans*, 491 U.S. 350, 373 (1989). To the contrary, a pending action in state court is generally "no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colo. River Water Logan v. U.S. Bank 7 Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *McClellan v. Carland*, 217 U.S. 268, 282 (1910)).

61      Defendants' State court actions and the continued pretext violate New York estate laws in addition to federal regulatory and REMIC polices and fraud on the public and may be enjoinable under provisions of statutory and common law as shown herein.

62      Article III standing is an issue often arising on the "cutting edge" of new forms of litigation, such as citizen environmental lawsuits. In such suits, the Supreme Court has defined "the irreducible minimum of standing" to mean that:

> First, the plaintiff must have suffered an injury in fact-an invasion of a legally protected interest which is (a) concrete and particularized, ... and (b) actual or imminent, not conjectural or hypothetical.... Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

63      Plaintiffs contend that, under the Fourteenth Amendment, due process of law requires that any suit (such as a mortgage foreclosure suit) seeking to deprive any natural person of his or her life, liberty, and property interests in his or her home must, as a matter of elemental due process, be brought by an injured party with what has come to be called "Article III Standing" in the Federal Courts. Plaintiffs asks that if such is the case that 42 U.S.C. §§ 1981 and 1982 as constructed have been construed in a constitutionally inform manner the courts are apparently incompetent to address certain and peculiarly federal issues with an intentionally discriminatory animus favoring banks and other financial persons and similar legal entities persons (banks and financial corporations and similar legal entities), Plaintiffs asks this Court to apply 42 U.S.C. §§ 1981-1982 equally against the banking persons and/or the state Court as being an unlawful form of discrimination that intentionally favors artificial or banking persons over natural citizens to give them standing when it is apparent that no such standing exists and was manufactured by deception and fraud in the court and upon the public.

64     To the extent that state procedure laws or rules are being bent to accommodate fraud which such statutes have been or are to be read and construed to mean that all persons, natural or unnatural, white, black, brown, red, or yellow, male or female, shall be subject to the same laws (and the same application and construction of laws, rules and Regulations relating to "the making, using, uttering of false or counterfeit records so as to be able to conduct a foreclosure. That is, the discrimination is being done or practiced by a construction and interpretation to allow fraud which fraud is being ratified through the state case, and/or will be ratified as a practice for defendants in New York entitles and a purported New York Common law Trust and/or its Trustee, as a standard operating procedure.

65     Wherefore, Plaintiffs ask this Court to declare and adjudge that no state may permit and/or excuse the practice of fraud upon the court through a Plaintiff that lacks standing from inception and that Defendants pay costs of suit, expert, and attorneys' fees as allowed by 42 U.S.C. §§1988(b)-(c).

## As and for a Ninth Cause of Action for
## Declaratory Judgment as to 31 USC § 3729(a)(1)(G): FALSE CLAIMS

59     All prior paragraphs are incorporated by reference.

60     Defendants have violated the federal false claims acts. They have alleged in their offering documents (424b5 Prospectus and PSA) that the Trust is/was a REMIC trust. By operation of the *ex post facto* assignment, false affidavits and failure of compliance and provision of the opinion letter from counsel on the belated attempts to transfer to the REMIC establish that it has failed to satisfy timing and definitional requirement and therefore is a failed REMIC. A REMIC that fails to satisfy the requirements is to be taxed as a corporation and payments made to holders of interests in a failed REMIC will likely be nondeductible dividend

payments, (See §7701(i)] Mortgage Pools treated as separate corporations and §7704(a) (publicly traded partnership shall be treated as a corporation) all of which subjecting the REMIC to significant taxation and penalties.

61   As a result of the acts and conduct described in the forgoing paragraphs a substantial controversy exists between Plaintiff and Defendants sufficient to warrant the issuance of a declaratory judgment finding that the Defendants are subject to issuance of an order to compel production of accounting, tax assessments and further injunctive decree against it and its attorneys prohibiting them or it from such further debt collection practices and conduct and claims of REMIC exemptions.

### As and for a Tenth Cause of Action
### Pursuant to NYS GBL §349

All prior paragraphs are incorporated by reference.

62   Defendants have violated and continue to pretend transfers or conveyances that violate New York Law and federal policies.

63   Said assignments and claims operate in law as a deceptive business practice within the proscription or in nature of §349, and is a pretext being used to avoid the

64   Tax payment obligations incurred by a as to a debt to the United States, regardless of whether such debt existed before or after the transfer was made or the obligation is incurred, if the debtor makes the transfer or incurs the obligation, by virtue of the fraudulent conveyance Defendants have submitted to the forfeiture of the REMIC and have engaged in deceptive practice which this Court may and is authorized to enjoin.

65   Defendants acts and or omissions effected Plaintiffs, consumers and members of the public at large.

66  Additionally, the Court may assess actual damages, a $50.00 penalty assessment, and because Defendants engaged in conduct aggravators (using perjury and false statements,) the court may in its discretion increase the award of damages up to treble and may award reasonably attorney fees in addition to the injunctive relief requested.

67  In determining the defendant's liability for any additional statutory damages, the court may consider the willful nature of the defendant's noncompliance with securities laws the frequency and persistence of the noncompliance, and the extent to which the noncompliance was intentional.

## RESERVATION OF RIGHTS

68  Plaintiffs reserve the rights to amend this Complaint to insert any additional cause of action he determines during the course of discovery is appropriate and applicable.

**WHEREFORE**, Plaintiffs pray for:

   (a) A declaration that Plaintiffs and does not and did not owe Defendants any money or either directly or indirectly,

   (b) A declaration that each claim of assignment or transfer are invalid;

   (c) An order that Defendants and each of its officers, employees, agents, attorneys, and any persons in active concert or participation with them are restrained and enjoined from further prosecuting or instituting any action against Plaintiff,

   (d) An award to Plaintiffs of the costs and attorneys' fees;

   (e) Such other relief as this Court or a jury may deem proper and just under the Circumstances.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated: September 15, 2015

                              Respectfully submitted,

                              Kenneth S. Pelsinger, LLC

                              Kenneth S. Pelsinger (kp 4039)
                              Attorney for Plaintiffs
                              3601 Hempstead Turnpike Suite 410
                              Levittown, NY 11756
                              (516) 784-5225

## VERIFICATION

I, RAFFEENA RAMJOHN, affirm pursuant to penalties of perjury as follows to be true:

I am the Plaintiff in the within action; that I read the within Verified Complaint and know the contents thereof, and that same is true to my own knowledge, except and to matters herein stated to be alleged upon information and belief, and that as to those matters I believe them to be true.

*Raffeena Ramjohn*

RAFFENA RAMJOHN

9/17/15

KENNETH S. PELSINGER
NOTARY PUBLIC - STATE OF NEW YORK
No. 02PE6054746
Qualified in Nassau County
My Commission Expires February 12, 2019